## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

_____

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 09-CR-20017** |
| | ) | |
| **JALAL NIMER ASAD, MOHAMED** | ) | |
| **REBHI QATTOUM, IMAD RIBHI** | ) | |
| **ABDALLAH, NADER JAMIL QATOUM,** | ) | |
| **REBHI A. QATTOUM, RAEDA A.** | ) | |
| **KATTOM, and NUHA IMAD** | ) | |
| **ABDALLAH,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>OPINION</u>

This case is before the court for ruling on Motions to Suppress (#48, #76) filed by Defendants Imad Ribhi Abdallah and Mohamed Rebhi Qattoum. This court has carefully considered the evidence presented at the evidentiary hearing and the arguments presented by the parties. Following this court's careful and thorough review, the Motions to Suppress (#48, #76) are DENIED.

## BACKGROUND

On October 7, 2009, Defendants Jalal Nimer Asad, Mohamed Rebhi Qattoum, Imad Ribhi Abdallah, Nader Jamil Qatoum, Rebhi A. Qattoum, Raeda A. Kattom, and Nuha Imad Abdallah, were charged in a 28-count Second Superseding Indictment (#52). The seven Defendants were charged with various offenses including: conspiracy to defraud the United States and violate the tax laws, in violation of 18 U.S.C. § 371; tax evasion, in violation of 26 U.S.C. § 7201; signing false corporation income tax returns, in violation of 26 U.S.C. § 7206(1); mail fraud, in violation of 18 U.S.C. § 1341; witness tampering, in violation of 18 U.S.C. § 1512(b); making false statements to

obtain health care benefits, in violation of 18 U.S.C. § 1035(a); and making false statements to federal agents, in violation of 18 U.S.C. § 1001(a).

Defendant Imad Ribhi Abdallah (Abdallah) was charged with one count of conspiracy, three counts of tax evasion, four counts of signing a false corporation tax return, six counts of mail fraud, one count of making false statements to obtain health care benefits, and two counts of making false statements to federal agents. Defendant Mohamed Rebhi Qattoum (Qattoum) was charged with one count of conspiracy, five counts of tax evasion, six counts of mail fraud, two counts of witness tampering and one count of making false statements to federal agents.

## MOTIONS TO SUPPRESS

On September 9, 2009, Abdallah filed a Motion to Suppress Evidence and Quash Warrant (#48). On October 2, 2009, Abdallah filed a Memorandum (#51) in support of his Motion. In his Motion and Memorandum, Abdallah stated that he is "an owner/operator" of Price Rite #1 Food and Liquor Store (Price Rite) and has standing to challenge the search and seizure of documentary evidence from that location. Abdallah argued that the search warrant authorizing the search of Price Rite was unconstitutionally deficient because it authorized law enforcement personnel to conduct a general search of Price Rite. Abdallah contended that the search warrant was impermissibly overbroad because it should have instructed police officers to seize only those items associated with or indicating activity associated with the illegal possession of cannabis. Abdallah argued that all evidence and fruits of evidence obtained or secured as the result of the search should be suppressed because the search warrant failed to describe with particularity the items to be seized. Abdallah also argued that the search should not be upheld on a "good faith" basis because "law enforcement should not be able to benefit and capitalize by acting upon a general search warrant and seizing

evidence wholly unrelated to this cannabis investigation."

On October 23, 2009, the Government filed a Memorandum in Opposition to the Motion to Suppress Evidence and Quash Warrant (#59).  The Government argued that the documents were properly seized and should not be suppressed.  It argued that the search warrant established probable cause to believe that cannabis possession and distribution was taking place at Price Rite and the agents executed the warrant according to the terms of the warrant and complaint.  The Government acknowledged that the warrant initially only mentioned evidence related to the offense of possession of cannabis.  However, the Government pointed out that the warrant, supported by the information in the complaint, went on to permit the seizure of evidence related to drug trafficking.  The Government argued that, since it logically follows that you must possess cannabis to traffic in it, evidence of trafficking is relevant to the possession offense.  The Government also contended that Abdallah suffered no harm from any violation of the Fourth Amendment so that suppression would be a disproportionate penalty and further argued that the "good faith" exception applies in this case.

On December 31, 2009, Qattoum filed a Motion to Suppress (#76) and Memorandum in Support (#77).  Qattoum argued that the search grossly exceeded the scope of the search warrant so that all evidence seized should be suppressed.  He also argued that the warrant was "facially invalid" because it lacked probable cause as it failed to include evidence of "drug trafficking by any employee or agent of Price Rite."

On January 29, 2010, the Government filed its Memorandum in Opposition to Qattoum's Motion to Suppress (#81).  The Government first argued that Qattoum, an employee of Price Rite, did not establish that he had a reasonable expectation of privacy both in the documents seized and the premises searched.  The Government noted that Qattoum does not claim any ownership interest

3

in Price Rite and Abdallah claims to be the only owner of the business.  The Government also noted that, although some of the documents seized belonged to Qattoum, they were not kept private but were found in an unlocked desk in an office/storage area behind the counter in the store where they were available to Abdallah and all other store employees.  The Government then argued that, even considering Qattoum's arguments, there is no basis for suppressing the evidence seized during the search of Price Rite.  The Government argued that the search warrant was facially valid, as the complaint contained evidence of two drug trafficking transactions that occurred at Price Rite.  The Government also argued that the documents were properly seized pursuant to the search warrant.

EVIDENTIARY HEARING

An evidentiary hearing was held on June 11, 2010.  The Government called Trevor Stalets, a detective with the City of Decatur Police Department, as its only witness.  Stalets testified that, during his 20 years with the police department, he investigated drug cases for approximately 8½ years.  Stalets testified that he has been assigned to the Joint Terrorism Task Force with the FBI for approximately seven years.

Stalets testified that, in April 2004, he was involved in a drug-related investigation concerning Price Rite.  Stalets testified that he spoke to one source "who indicated that they were present at the store and witnessed an individual conduct two separate transactions within a short period of time where they were distributing small amounts of cannabis."  Stalets testified that he spoke to another informant who stated that the informant had been in the store a short time prior to providing the information and was told that Qattoum, an employee at Price Rite, "would find quantities of cannabis either inside the store or out in the parking lot that he would keep for his personal use."

4

Stalets testified that, based upon this information, he believed there was probable cause to search Price Rite and prepared a complaint for search warrant and also prepared the search warrant itself.  These documents were introduced into evidence at the hearing.  In the complaint for search warrant, which he signed under oath, Stalets stated:

>    2.  Your affiant states between the dates of April 27, 2004 and April 30, 2004 he had an occasion to speak with Jane Doe (Assumed Name) concerning a drug investigation.  Your affiant states Doe knew the affiant to be a police officer.  Your affiant states Doe indicated she had an occasion to be inside the business of Price Rite #1 Food & Liquor, 1260 North Jasper Street, Decatur, Illinois between the dates of April 27, 2004 and April 30, 2004.  Your affiant states Doe indicated during this time, she observed an unknown subject do two separate transactions with two other subjects.  Doe explained these transactions were for the sell/purchase of quantities of cannabis.  Doe states she knows what cannabis looks and smells like from her previous life experience.

Stalets stated that "Doe is considered a reliable source, who has previously provided law enforcement officials with information on at least five or more different occasions" and that "this information has lead to the convictions of individuals in both state and federal court, and the seizure of illegal drugs, money and weapons."

Stalets also stated in the affidavit:

>    4.   Your affiant states Pat Smith (Assumed Name) has

5

provided affiant with information concerning the employees at Price
Rite #1 Food & Liquor, 1260 North Jasper Street, Decatur, Illinois.
Your affiant states between April 25, 2004 and April 30, 2004 he met
with Smith, who knows the affiant to be a police officer. Your affiant
states during this meeting, Smith indicated she knows from
frequenting this business, that one of the [employees] is a[] user of
cannabis. Your affiant states Smith indicated she knows from talking
with this employee, who is known by the name of Mohammed
Qattoum, that he will find cannabis or other illegal drugs inside the
store or in the parking lot of the store and keep them [for] his own
personal use. Your affiant states Smith also indicated she knows
from being in the store approximately two or three months ago that
a handgun is kept at the store for protection.

Stalets stated in the complaint that "Smith is also considered a reliable source who has previously
provided information to law enforcement officials that has been corroborated through other sources
and other investigative techniques." Stalets stated that the information provided by Smith "has yet
to lead to any arrest or convictions in a criminal court, but the investigation is still on-going."

Stalets testified that he contacted one of the assistant state's attorneys in the Macon County
State's Attorney's Office and presented the complaint and search warrant he prepared for review.
The assistant state's attorney approved the paperwork. On April 30, 2004, Stalets presented the
complaint and search warrant to Macon County Judge Thomas Little. Judge Little reviewed the
documents prepared by Stalets and then issued the search warrant for the search of Price Rite. The

6

search warrant authorized a search of Price Rite for evidence of the offense of unlawful possession of cannabis and specifically authorized the seizure of the following items:

> 1.  Any and all Cannabis.  2.  Any and all drug paraphernalia associated with drug use or drug trafficking, including firearms and ammunition.  3.  Any United States currency associated with drug trafficking.  4.  Any and all documents associated with drug trafficking, including but not limited to bank records, electronic records contained in various types of electronic equipment or devices, such as computers, cellular phones, electronic organizer, tax records, etc...  5.  Any and all documents indicating possession or ownership of the premise.

Stalets testified that the search warrant was executed the same day, April 30, 2004.  Stalets identified a diagram of the interior of the Price Rite store he had prepared and also identified photographs of the interior of the store.  The diagram and photographs were admitted into evidence. Stalets testified that four employees of Price Rite were present at the time of the search, and three of the employees were behind a bullet-proof glass partition where customers could not go.  Stalets testified that the officers executing the warrant found cannabis on one of the customers inside the store and found approximately one-half gram of crack cocaine on the person of another customer inside the store.  Stalets testified that they seized the drugs and also seized currency found on these two customers.  Stalets testified that, underneath the counter where the cash registers were located (behind the bullet-proof glass), they found two handguns, along with assorted ammunition, a box containing postal scales or gram scales and another box containing hundreds of individual Ziploc

mini plastic bags.  Stalets testified that the Ziploc bags were stapled to a piece of cardboard which listed the size of the mini plastic bags and the cost for the individual bags.

Stalets testified that they also found and seized documents located in an office area at the back of the store.  Stalets testified that this area did not have a door, just an opening leading to the room.  Stalets testified that the room contained a desk, which was not locked, and a filing cabinet.  In addition, merchandise was stored in this room.  A restroom for the employees of the store was located off the office area, and employees would have to walk through the office area to get to the restroom.  Stalets testified that the desk and filing cabinet contained documents which would probably fill four to five banker's boxes.  He testified that they seized a stack of documents from the desk approximately four to five inches in height.  Stalets testified that no documents were taken from the file cabinet.  Stalets testified that he personally reviewed all of the documents to determine if they were within the scope of the search warrant before they were seized.  Stalets testified that he put the term "etc." in the warrant by mistake because the documents encompassed by the search warrant were adequately described by the phrase in the warrant "[a]ny and all documents associated with drug trafficking."  The documents seized included:

Spiral-bound notebook.

Steno Pad.

Ayat 1, Inc. state and federal tax returns for 2001, 2002, and 2003.

Sarra, Inc., state and federal tax returns for 2003.

Mohamed and Raeda Qattoum personal tax return for 1999.

Loan documents for the Qattoums at Southside Bank.

Agreement for Deed between Imad Abdallah and Una Mae Eldridge.

8

Bank document from Morton Community Bank addressed to Abdallah.

Check stubs from check book, some with Arabic notations.

Bank statements for Ayat 1, Inc.

Correspondence between Michael Owens and Mike Asad re Freedom Oil properties.

Bank statements from Citizens Community Bank for Sarra, Inc. with individual pages with financial ledger written out for Sarra, Inc.

Calling card.

3 documents from Arab Jordan Investment Bank indicating check transfers to Abdallah from Sana Aljarkasi.

Real Estate purchase contract for Mohamed and Raeda Qattoum's home in Decatur.

Balance Sheets (total of 5) for Ayat 1, Inc. and Sarra, Inc.

Merchant Services credit card statements for Price Rite.

Confidentiality Agreement between Jalal and Mike Asad and Kwik.

Bank document for Abdallahr-Moath, Inc. in the name Abdallah Kattoum.

Expense invoices/documents/notations for Price Rite, some with Arabic notations.

Two 1099-Int from First Midwest Bank to Wasfia Abdallah.

Tennessee Birth Certificate from Sherri Anita Lake.

Letter from USDA re Food Stamp Program.

During cross examination, Stalets admitted that, as part of his work with the joint task force investigating various crimes related to terrorism, he was working with an individual in investigating Qattoum and some conversations were recorded during the investigation in early 2004. Qattoum introduced into evidence the documents seized during the search and Stalets was asked to review these exhibits. Stalets testified that tax records can be relevant to drug dealing because "some drug dealers have utilized businesses to funnel the, money-launder their illegal proceeds through and potentially use as write-offs for the businesses, showing profits or losses for their businesses . . . ." Stalets testified that the warrant authorized him to collect evidence in a drug trafficking case "to include records that were involved as possible evidence for delivery of cannabis or drug trafficking." Stalets testified that Qattoum and his wife arrived at Price Rite during the search. Stalets stated that Qattoum said he was affiliated with Price Rite. Stalets testified that he was aware that Sarra, Inc. was a corporation formed by Qattoum's wife which basically owned Grand Food & Liquor.

Stalets further testified that, when discussing the information he received from Smith in the complaint for search warrant, he meant that Qattoum found cannabis both inside the store and in the parking lot. Stalets testified that is what he meant when he used the term "or." Stalets testified that the Price Rite was located in the inner city part of Decatur where gangs are present.

During redirect examination, Stalets stated that there were some documents included in the documents seized that were taken mistakenly that had no "evidentiary purpose." Stalets explained that he believed those documents were attached to or stuck to the other documents. Defendants did not present any testimony at the hearing.

Following the hearing, this court set a schedule for the parties to file proposed findings of

fact and conclusions of law.  On July 2, Abdallah filed his Memorandum: Findings of Fact and Conclusions of Law (#90) and Qattoum filed his Proposed Findings of Fact and Conclusions of Law (#91).  On July 23, 2010, the Government filed its Proposed Findings of Fact and Conclusions of Law (#92).

## ANALYSIS

This court initially notes that it found Stalets' testimony at the evidentiary hearing to be credible.  This court's ruling is based upon the credible testimony provided by Stalets and the documents introduced into evidence.

## QATTOUM'S MOTION TO SUPPRESS

Qattoum has argued that, based upon the evidence presented at the hearing, the evidence seized during the execution of the search warrant should be suppressed.  In response to the Government's argument that he does not have standing to challenge the search, Qattoum noted that the complaint prepared by Stalets indicated that Qattoum was an employee at Price Rite.  Qattoum also noted that Stalets testified that the documents were found in an area that was not open to the public where only three employees were working at the time of the search.  Qattoum argued that this "indicates that the number of people who had access to the area was limited."  Qattoum also argued that the office area where the documents were found was "not an area in which all employees would be working in servicing the customers" because the primary function of the business "would be dealing with customers in the area behind the bulletproof glass."  Qattoum argued that he had a legitimate expectation of privacy in documents seized from the desk, including his personal papers, based upon <u>Mancusi v. DeForte</u>, 392 U.S. 364 (1968) and <u>O'Connor v. Ortega</u>, 480 U.S. 709 (1987).

The use of "the word 'standing' in the context of Fourth Amendment rights " is "shorthand

to refer to a defendant's ability to challenge a search or seizure based on a reasonable expectation of privacy in the property." United States v. Crowder, 588 F.3d. 929,  934 n.5 (7th Cir. 2009). A defendant must show that he had a reasonable expectation of privacy because the Fourth Amendment's protection against illegal searches and seizures is "a personal right" that can only be invoked by the individual whose rights are violated.  See United States v. Swift, 220 F.3d 502, 510 (7th Cir. 2000), quoting Minnesota v. Carter, 525 U.S. 83, 88 (1998).  Therefore, a "defendant who objects to the search of a particular area bears the burden of proving a legitimate expectation of privacy in the area searched." United States v. Mendoza, 438 F.3d 792, 795 (7th Cir. 2006), citing Rawlings v. Kentucky, 448 U.S. 98, 104 (1980); see also United States v. Villegas, 495 F.3d 761, 767 (7th Cir. 2007).  A defendant must show a privacy interest not only in the seized item, but also in the area where the item was found.  Mendoza, 438 F.3d at 795.  Therefore, even though some of the documents seized were Qattoum's personal papers, he must show that he had a privacy interest in the office area of Price Rite where the documents were found.

"A reasonable expectation of privacy is present when (1) the defendant exhibits an actual or subjective expectation of privacy, and (2) the expectation is one that society is prepared to recognize as reasonable." United States v. Amaral-Estrada, 509 F.3d 820, 827 (7th Cir. 2007) see also United States v. Marrocco, 578 F.3d 627, 631 n.4 (7th Cir. 2009).  In determining whether the defendant held a subjective expectation of privacy, the court looks at the defendant's efforts to conceal and keep private that which was the subject of the search.  Villegas, 495 F.3d at 767.  "To say that society is prepared to recognize an expectation of privacy as reasonable, 'recognizes the everyday expectations of privacy that we all share.'" Villegas, 495 F.3d at 767, quoting Minnesota v. Olson, 495 U.S. 91, 98 (1990).  In making this determination, this court must keep in mind that the United

States Supreme Court has made clear that "[a]n expectation of privacy in commercial premises . . . is different from, and indeed less than, a similar expectation in an individual's home." Carter, 525 U.S. at 90, quoting New York v. Burger, 482 U.S. 691, 700 (1987); see also O'Connor, 480 U.S. at 725; Lesser v. Espy, 34 F.3d 1301, 1305 (7th Cir. 1994).

The cases cited by Qattoum to support his standing to challenge the search hold only that an employee of a business can have a reasonable expectation of privacy under some circumstances. See O'Connor, 480 U.S. at 718-19, 726-28 (doctor had reasonable expectation of privacy in his desk and file cabinets which were located in his private office; however, question remained whether search by employer was reasonable); Mancusi, 392 U.S. at 368-69 (union official had standing to challenge seizure of records where he had custody of papers at the moment of their seizure and papers were located in private office he shared with other union officers).  In this case, this court concludes that Qattoum has not established that he had a legitimate expectation of privacy in the area searched.

This court concludes that Qattoum did not show that he had an actual or subjective expectation of privacy in the area which was searched.  The documents seized were located in an unlocked desk in an office area which did not have a door and through which all employees of the store had to go to reach the rest room.  While Qattoum has argued that only three employees were working in the back area of the store at the time of the search, no evidence was presented about the number of employees employed by Price Rite who would have had access to the office area and the documents in the unlocked desk.  In any case, at least three employees besides Qattoum had access to the area where the unlocked desk was located, as well as Abdallah, the owner of Price Rite. This court additionally notes that Qattoum presented no evidence that he made any efforts to conceal and

keep private the documents which were the subject of the search.  As noted, the desk was not locked and was located in an open area accessible to Abdallah and the other employees.  Qattoum therefore cannot challenge the search and his Motion to Suppress (#76) is DENIED.

ABDALLAH'S MOTION TO SUPPRESS

Abdallah has argued that the evidence seized during the search should be suppressed because: (1) the information contained in the complaint for search warrant prepared by Stalets was inconsistent with the confidential information he received and the complaint for search warrant failed to establish probable cause to believe that an employee of Price Rite engaged in the criminal offense of drug trafficking; (2) the search warrant impermissibly permitted law enforcement personnel to conduct a general search; and (3) the "good faith" exception does not apply in this case.

I.  VALIDITY OF SEARCH WARRANT

In arguing that the search warrant is invalid, Abdallah has pointed out that Stalets testified that Doe told him the quantities of cannabis were "small," but he failed to put that detail into his complaint for search warrant.  Abdallah also pointed out that the complaint for search warrant stated that Smith said that Qattoum would find cannabis in Price Rite's parking lot or store, but Stalets testified that this meant he would find cannabis in both locations.  Abdallah also argued that the information Stalets provided in the complaint for search warrant was not adequate to establish probable cause to believe that Qattoum or anyone else associated with Price Rite was trafficking in illegal drugs.

The Fourth Amendment states that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly

14

describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Accordingly, a warrant must be issued based upon probable cause. Probable cause is a common-sense, nontechnical inquiry, and an affidavit submitted in support of a search warrant application will be sufficient to support a finding of probable cause if, "based on the totality of the circumstances, the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." United States v. Dismuke, 593 F.3d 582, 586 (7th Cir. 2010), quoting United States v. Peck, 317 F.3d 754, 756 (7th Cir. 2003). Moreover, "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" Illinois v. Gates, 462 U.S. 213, 236 (1983), quoting Spinelli v. United States, 393 U.S. 410, 419 (1969); see also United States v. Billian, 600 F.3d 791, 792 (7th Cir. 2010).

Based upon the applicable standard, this court concludes that the discrepancies relied upon by Abdallah were minor and have no effect on the determination of probable cause. This court concludes that Stalets provided adequate information in the complaint regarding the information provided by the informants, and the basis for believing the information provided to be reliable, to establish probable cause for the issuance of a search warrant allowing a search for evidence of drug possession and trafficking. The Government is correct that it is not important whether the complaint established that an employee or agent of Price Rite was involved in drug trafficking.[1] "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are

---

[1] This court notes that it agrees with the Government that employees of Price Rite were not excluded as possible participants in the drug transactions that did occur.

located on the property to which entry is sought." <u>Wyoming v. Houghton</u>, 526 U.S. 295, 302 (1999). In this case, the complaint contained information regarding two drug trafficking transactions that occurred at Price Rite as well as information regarding possession of cannabis by Qattoum, an employee of Price Rite. This court therefore concludes that the information included in the complaint was adequate to establish probable cause to believe that evidence of cannabis possession and trafficking were located at Price Rite.

Abdallah also argued that the scope and breadth of the search warrant far exceeded the probable cause to support it. Abdallah argued that the information Stalets included in the complaint did not even suggest that documentary evidence of drug usage or trafficking even existed or would be located within Price Rite.

This court agrees with the Government, however, that it is common for persons involved in drug transactions to maintain records of such transactions and it is common to include in drug investigation search warrants a request to seize documents and records of drug trafficking or transactions. <u>See</u> <u>United States v. Orozco</u>, 576 F.3d 745, 748-49 (7th Cir. 2009). The Government has also argued, citing case law from other jurisdictions, that tax records or business documents showing the amount of money reported by a business to the IRS is relevant in establishing the extent of drug trafficking conducted at the business. <u>See</u> <u>United States v. Vigneau</u>, 337 F.3d 62, 66 (1st Cir. 2003) (at the defendant's trial, where he was convicted of conspiracy to distribute marijuana, the Government's evidence included a drug ledger and tax records establishing a lack of other income); <u>United States v. Walser</u>, 275 F.3d 981, 983-94 (10th Cir. 2001) (in drug investigation, the search warrant provided for seizure of tax returns). In addition, the Government argued that the records seized were relevant to show Abdallah's and Qattoum's connection to the store.

16

In its Memorandum in Opposition to the Motion to Suppress Evidence and Quash Warrant (#59), the Government stated that the only documents seized which it intends to introduce into evidence at trial are: (1) the steno pad and spiral-bound notebook, both of which appeared to be business ledgers and contained writings in Arabic; (2) tax returns for Ayat 1, Inc., Sarra, Inc., and the 1999 tax return for Mohamed and Raeda Qattoum; and (3) the loan documents for the Qattoums at Southside Bank.  The Government stated that the steno pad and notebook were seized as "documents associated with drug trafficking," noting that the notebook included a column that contained "other income."  The Government stated that the tax returns and loan documents were seized as "tax records" and records "indicating possession or ownership of the premise."

This court agrees with the Government that the seizure of the documents the Government intends to introduce as evidence did not exceed the scope of the warrant.  This court further agrees that the fact that a small number of documents were seized that were not covered by the warrant does not require the suppression of items properly seized pursuant to the warrant.  See United States v. Hargus, 128 F.3d 1358, 1363 (10th Cir. 1997); cf. United States v. Medlin, 842 F.2d 1194, 1196-98 (10th Cir. 1988) (court found district court properly suppressed evidence where deputy seized 667 items of property related to state offenses, none of which were identified in the warrant authorizing the search).  This court therefore concludes that suppression of the evidence is not warranted based upon Abdallah's arguments attacking the validity and scope of the warrant.

## II.  PARTICULARITY REQUIREMENT

Abdallah has also argued that the description of the items to be seized was too broad and allowed an impermissible general search of Price Rite for items which had no possible relevance to the crime of drug possession.  Abdallah has specifically focused on the inclusion of "tax records,

etc." in the list of items to be seized.  Abdallah argued that this item does not relate to the possession

of cannabis and is "a vague description capable of various interpretations."

A warrant's description of the items to be seized must be specific enough to allow the

officers executing the warrant to identify the things to be seized with reasonable certainty.  See

Russell v. Harms, 397 F.3d 458, 464 (7th Cir. 2005).  It is not necessary that such description be

"elaborately detailed," Russell, 397 F.3d at 464, United States v. Somers, 950 F.2d 1279, 1285 (7th

Cir. 1991), or that it "minutely identify" every item to be seized, United States v. Prewitt, 553 F.2d

1082, 1086 (7th Cir. 1977).  It must be as specific as the circumstances and the nature of the activity

under investigation permit.  United States v. Shoffner, 826 F.2d 619, 630-31 (7th Cir. 1987).  The

inquiry is whether an officer executing the warrant would reasonably know what items are to be

seized.   United States v. Hall, 142 F.3d 988, 996 (7th Cir. 1998).

"The requirement of particular description is conventionally explained as being intended to

protect against 'general, exploratory rummaging in a person's belongings.'" United States v. Sims,

553 F.3d 580, 582 (7th Cir. 2009), quoting Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971).

However, the Seventh Circuit pointed out in Sims that it also serves to prevent circumvention of the

requirement of probable cause by limiting the discretion of officers executing a warrant to determine

the permissible scope of their search.  Sims, 533 F.3d at 582.  Therefore, police  officers who have

probable cause to believe that drug activity was occurring in a business cannot use a search warrant

to authorize a search for evidence of another crime, such as tax evasion.  See Sims, 553 F.3d at 582

(pointing out that probable cause to search a house for drugs does not allow police officers to search

for counterfeit money if they have suspicion short of probable cause to believe that the house may

contain counterfeit money).

The Government has argued that the description of items to be seized was adequate to meet the particularity requirement in this case. The Government pointed out that, if detailed particularity is impossible, "generic language is permissible if it particularizes the <u>types</u> of items to be seized." <u>See</u> <u>Hall</u>, 142 F.3d at 996 (emphasis added); <u>see also</u> <u>United States v. Malik</u>, 680 F.2d 1162, 1165 (7th Cir. 1982) ("books, papers, (and) documents" held to be a sufficient description). The Government further argued that the inclusion of "tax records, etc." was not improper because Stalets testified that the tax records that could be seized needed to relate to drug trafficking. The Government pointed out that nothing was seized based upon the "etc." included in the list of items to be seized because all of the documents, except a few documents which were attached to other documents and taken by mistake, were properly seized as documents associated with drug trafficking or documents indicating possession or ownership of the premise. The Government argued that the words "tax records, etc." were limited by the words that preceded them and for that reason only applied to records related to drug trafficking.

This court agrees with the Government's arguments and concludes that the search warrant adequately described the items to be seized and did not allow unfettered discretion in the seizure of documents. <u>See</u> <u>United States v. Vitek Supply Corp.</u>, 144 F.3d 476, 480-81 (7th Cir. 1998) (court found warrant which authorized seizure of "any and all records" of smuggling and distribution of adulterated and misbranded foods was not impermissibly broad); <u>United States v. Vanichromanee</u>, 742 F.2d 340, 347 (7th Cir. 1984) (court upheld warrant, attacked as being over broad, that allowed the seizure of any "writings" related to a conspiracy to import heroin but did not specify precise documents). This court concludes that the description in this case was "specific enough to enable the agents executing the warrant to identify with reasonable certainty the things to be seized." <u>See</u>

United States v. Jimenez, 2003 WL 22038575, at *3 (N.D. Ill. 2003), citing United States v. Sleet, 54 F.3d 303, 307 n.1 (7th Cir. 1995).  Accordingly, this court rejects Abdallah's argument that the evidence must be suppressed on this basis.

### III.  GOOD FAITH EXCEPTION

This court further agrees with the Government that, even if there are some problems with the search warrant in this case, the good faith exception applies here.  In United States v. Leon, 468 U.S. 897 (1984), the United States Supreme Court "articulated the good faith exception to the exclusionary rule, holding that evidence obtained in violation of the Fourth Amendment is nonetheless admissible if the officer who conducted the search acted in good faith reliance on a search warrant."  United States v. Pappas, 592 F.3d 799, 801-02 (7th Cir. 2010), citing Leon, 468 U.S. at 922-23.  Accordingly, the fruits of a search based on an invalid warrant may be admitted at trial if the executing officer relied on the invalid warrant in good faith."  Orozco, 576 F.3d at 750, citing Leon, 468 U.S. at 922.  "An officer's decision to seek a warrant is prima facie evidence that the officer was acting in good faith."  Dismuke, 593 F.3d at 586; see also United States v. Koerth, 312 F.3d 862, 868 (7th Cir. 2002).  Consulting "with the prosecutor prior to applying for [a] search warrant provides additional evidence of [that officer's] objective good faith."  Pappas, 592 F.3d at 802, quoting United States v. Bynum, 293 F.3d 192, 198 (4th Cir. 2002).  "A defendant may rebut the prima facie evidence of good faith by presenting evidence to establish that (1) the issuing judge wholly abandoned his judicial role and failed to perform his neutral and detached function; (2) the affidavit supporting the warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (3) the issuing judge was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless

20

disregard of the truth." <u>Pappas</u>, 592 F.3d at 802.

In this case, a prima facie case for the good faith exception exists because Stalets not only decided to seek a search warrant but also had the documents he prepared reviewed by an assistant State's Attorney before presenting the paperwork to Judge Little.  This court concludes that Abdallah cannot rebut the prima facie evidence of good faith in this case.  Abdallah has not even argued that Judge Little abandoned his judicial role and failed to perform his neutral and detached function.  Instead, Abdallah has argued that the search warrant was "facially deficient" and the good faith exception should not apply because the executing officers transformed the warrant into a general warrant.  This court concludes that Abdallah's arguments do not rebut the prima facie evidence of good faith because he has not shown that Stalets was reckless or dishonest in preparing the supporting affidavit or that the affidavit prepared by Stalets was so lacking in the indicia of probable cause that reliance on it was unreasonable.

IT IS THEREFORE ORDERED THAT:

(1) The Motions to Suppress (#48, #76) are DENIED.

(2)  This case remains scheduled for a status conference on September 8, 2010, at 11:00 a.m.

ENTERED this 3rd day of September, 2010

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE